1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ALLEN HASSAN,

11              Petitioner,            No. CIV S-05-2144 MCE DAD P

12        vs.

13   FRED MORAWCZNSKI,

14              Respondent.            FINDINGS AND RECOMMENDATIONS

15   _____/

16              Petitioner is proceeding through counsel with an application for writ of habeas

17   corpus pursuant to 28 U.S.C. § 2254.  On July 11, 2003, petitioner was convicted in Placer

18   County Superior Court of obstructing an executive officer (Cal. Penal Code § 69), resisting a

19   peace officer (Cal. Penal Code § 148(a)), speeding (Cal. Veh. Code § 22350), driving without

20   possession of valid registration (Cal. Veh. Code § 4462(a)), and assault on a peace officer (Cal.

21   Penal Code § 241(b)).  (P. & A. in Supp. of Pet. at 2, 16; Answer at 5.)  In his application for

22   federal habeas relief pending before this court, petitioner alleges that he was: (1) denied his Sixth

23   Amendment right to a unanimous jury verdict when the trial court failed to give a standard

24   instruction requiring that the jury agree as to which act or acts constituted the assault charged in

25   order to convict; (2) denied his right to due process when the jury was erroneously instructed on

26   the elements of assault and when the prosecutor committed misconduct in closing argument by

1

1   misrepresenting the legal elements of assault; and (3) denied his Sixth Amendment right to

2   effective assistance of counsel when his trial counsel failed to object to hearsay and expert

3   opinion offered by lay witnesses, elected not to introduce evidence of prior misconduct by the

4   arresting officer and failed to introduce additional expert testimony that would have supported

5   the theory of the defense.  (Pet. at 3.)  Upon consideration of the record and the applicable law,

6   the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

7                                    FACTUAL BACKGROUND

8            On the evening of January 15, 2002, petitioner was driving from the Arco Arena

9   in Sacramento to his home in Auburn.  (Answer, Reporter's Transcript (hereinafter "RT") at 489,

10   493-94.)  Petitioner was pulled over for speeding on Highway 49 by California Highway Patrol

11   Officer Patrick Cooney and ordered out of his vehicle.  (RT at 495, 499.)  A physical altercation

12   ensued between petitioner and Officer Cooney.  (Answer at 6; RT at 503.)  The central factual

13   issue at petitioner's trial was what led to the physical altercation and it was on this central issue

14   that the parties presented widely divergent versions of the events.

15            According to Officer Cooney's trial testimony, when he arrived at the passenger

16   side of the stopped vehicle, petitioner immediately questioned him in a harsh tone, stating "what

17   do you want?"  (RT at 17.)  When Cooney attempted to respond, petitioner interrupted him and

18   stated "Speed; right?"  (RT at 17-18.)   In response to Cooney's request for his driver's license,

19   registration and insurance, petitioner produced his license but did not make a legitimate attempt

20   to locate the other documents and instead stated something to the effect of "I'm in no mood for a

21   lengthy delay, so write the fucking ticket."  (RT at 18-20.)  In light of petitioner's odd, belligerent

22   and harsh, bordering on abusive, behavior Cooney directed him to exit his vehicle to assess

23   whether petitioner was under the influence of anything or if there was something else underlying

24   his behavior.  (RT at 22-23.)  Petitioner did so and walked hastily back toward Officer Cooney,

25   waiving his arms and complaining in an agitated manner.  (RT at 26.)  Petitioner then stated

26   something to the effect that he wanted Officer Cooney's badge number, reached up with his right

2

1   hand and grabbed the officer's badge as well as part of the officer's uniform and took hold of it.

2   (RT at 30.)   Officer Cooney grabbed petitioner's wrist and pushed him back on petitioner's chest

3   but petitioner pulled out of his grip.  (Id.)[1]  The officer caught back up to petitioner as he walked

4   back toward his vehicle and grabbed him by the arm, just below the shoulder.  (RT at 36.)

5   Petitioner broke free again with a swinging motion and a closed fist.  (RT at 37.)  Officer Cooney

6   then grabbed both of petitioner's forearms and told him he was under arrest at which time he was

7   able to handcuff petitioner.  (RT at 38.)  However, as the officer began to walk the handcuffed

8   petitioner back toward the patrol car, petitioner planted his foot and dipped his left shoulder

9   forcibly back into the officer's rib cage.  (RT at 42-45.)   The blow knocked the officer off

10  balance and the petitioner went to the ground with the officer falling on top of him.  (RT at 46-

11  47.)  With petitioner immediately complaining that he was having a heart attack and that the

12  officer was trying to kill him, Officer Cooney got petitioner up and into his patrol car and

13  contacted his dispatch to report the incident.  (RT at 49-53.)  According to Officer Cooney the

14  entire incident took place over a period of only five minutes.  (RT at 64.)

15          The defense presented a significantly different version of the events to the jury.

16  According to Dr. Hassan, he was completely cooperative and Officer Cooney was courteous up

17  until the point that the officer learned petitioner's name.  (RT at 498.)  At that point, the officer

18  very angrily and loudly ordered petitioner out of his car and let loose with a vitriolic, profanity

19  laced tirade directed at petitioner for no reason.  (RT at 499.)  Nonetheless, petitioner followed

20  the officer's direction to move to an area between the cars.  (RT at 502.)  At that point petitioner,

21  while leaning forward and pointing at the officer's badge but never touching it, twice stated that

22  he would like to see the officer's badge.  (RT at 502-03.)   Officer Cooney then grabbed

23  petitioner by his belt, swung him back and forth and took him to the ground.  (RT at 503.)

24  When petitioner awoke, he was unable to breath and blood was coming from his face and Officer

25

26      [1]  Officer Cooney's state of mind was that once petitioner grabbed the officer's badge and
    uniform, he was going to be arrested.  (RT at 31.)

1   Cooney was still in a rage.  (RT at 505.)   Petitioner told the EMT that arrived on scene and

2   others that he had been roughed up by the CHP officer and had been the victim of racial

3   profiling.  (RT at 512-14.)   The jury apparently rejected petitioner's testimony, returning guilty

4   verdicts on all counts.

5                                   PROCEDURAL BACKGROUND

6                    As noted, on July 11, 2003, Placer County Superior Court jury found petitioner

7   guilty on all counts.  (Answer at 5.)  On January 12, 2004, petitioner was placed on probation for

8   three years with the condition that he perform 90 days of community service.  (P. & A. in Supp.

9   of Pet. at 16; Answer at 5.)  Petitioner's motion for new trial was denied and he timely filed a

10   notice of appeal.  (Id.)

11                    On December 21, 2004, the Appellate Department of the Placer County Superior

12   Court affirmed the denial of a motion for new trial in a reasoned opinion.  (Answer, Lod. Doc.

13   "December 21, 2004, Opinion Affirming Denial of Motion for New Trial" (hereinafter

14   "Opinion")).  On January 24, 2005, the Appellate Department denied petitioner's petition for

15   rehearing.  (Answer, Lod. Doc. "January 24, 2005, Order Denying Petition for Rehearing").  On

16   February 10, 2005, the California Court of Appeal for the Third Appellate District denied

17   petitioner's request for transfer of appeal.  (Answer, Lod. Doc. "February 10, 2005, Third

18   Appellate District Court Denial of Transfer of Appeal").

19                    On March 9, 2005, petitioner filed an application for writ of habeas corpus with

20   the California Supreme Court presenting the same issues as are set forth in the instant petition.

21   (Answer, Lod. Doc. "April 27, 2005, California Supreme Court Decision Denying Petition for

22   Writ of Habeas Corpus").  On April 27, 2005, the California Supreme Court summarily denied

23   the petition.  (Id.)

24                                          MOOTNESS

25                    On May 26, 2009, this Court ordered petitioner to address whether any adverse

26   consequences of the challenged conviction remained and what, if any, effective habeas relief

4

1    could still be provided through this action.  (Doc. No. 7.)  On June 8, 2009, petitioner filed a

2    brief outlining numerous adverse consequences that he continues to suffer as a result of his

3    conviction.  (Doc. No. 8.)  On June 16, 2009, respondent filed a response to petitioner's brief

4    conceding that petitioner's claim was not moot.  (Doc. No. 9 at 2.)  Accordingly, this court will

5    presume that petitioner's claim for habeas relief is not moot.  Chacon v. Wood, 36 F.3d 1459,

6    1463 (9th Cir. 1994) ("Once convicted, one remains forever subject to the prospect of harsher

7    punishment for a subsequent offense as a result of federal and state laws that either already have

8    been or may eventually be passed.")

9                                    ANALYSIS

10   I.  Standards of Review Applicable to Habeas Corpus Claims

11          A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

12   some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860,

13   861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v.

14   Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

15   interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

16   Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

17   corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

18   (1972).

19          This action is governed by the Antiterrorism and Effective Death Penalty Act of

20   1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

21   1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

22   habeas corpus relief:

23              An application for a writ of habeas corpus on behalf of a
              person in custody pursuant to the judgment of a State court shall
24              not be granted with respect to any claim that was adjudicated on
              the merits in State court proceedings unless the adjudication of the
25              claim -

26   /////

                                          5

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001). If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008). See also Frantz v. Hazey, 513 F.3d 1002, 1013 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002). When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo. Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

/////

1    II.  Petitioner's Claims

2         A.  Sixth Amendment Right to a Jury Trial

3              Petitioner alleges that he was "denied the right to a unanimous jury verdict

4    guaranteed by the Sixth Amendment to the United States Constitution, when the trial court failed

5    to give a standard jury instruction on unanimity, in view of varying evidence in support of three

6    separate alleged assaults."  (Pet. at 3.)  Petitioner states further that "the requirement of jury

7    unanimity has been recognized as a federal constitutional principle; it is necessarily applicable to

8    state court trials through the habeas corpus statute."  (P. & A. in Supp. of Pet. at 17) (emphasis in

9    original.)[2]

10             Essentially, petitioner argues that the prosecution argued to the jury that it could

11   convict him of assault if it found any one of at least three discreet acts to have occurred, the

12   grabbing of the officer's badge, the swing at the officer as petitioner broke free from the officer's

13   hold or the spearing of the officer with his shoulder after he was handcuffed.  In addition,

14   petitioner asserts that in his closing the prosecutor argued, improperly, that petitioner could be

15   convicted of assault based upon his mere pointing at the officer's badge and that the trial court

16   failed to make clear to the jury that the law did not allow such a conclusion to be reached.

17   Petitioner argues that under these circumstances it was a violation of his federal constitutional

18   rights for the trial court not to instruct the jury with the California unanimity instruction requiring

19   /////

20   /////

21

22        [2]  In support of this claim petitioner relies on the Ninth Circuit's decisions in three federal
     prosecutions, United States v. Garcia-Rivera, 353 F.3d 788, 792 (9th Cir. 2003), United States v.
23   Echeverry, 719 F.2d 974, 975 (9th Cir. 1983), and United.States v. Payseno, 782 F.2d 832, 836-
     837 (9th Cir. 1986).  (P. & A. in Supp. of  Pet. at 17-18 & n.5.)  Petitioner has not provided the
24   court with any authority that criminal defendants in state court are entitled to a jury unanimity
     instruction as a matter of federal constitutional law.  See Knowles v. Mirzayance, ___ U.S.___,
25   ___, 129 S. Ct. 1411, 1419 (2009) ("this Court has held on numerous occasions that it is not an
     'unreasonable application of clearly established Federal law' for a state court to decline to apply
26   a specific legal rule that has not been squarely established by this Court").

                                              7

the jurors to unanimously agree on the act or acts that the defendant committed constituting the

crime.[3]

Petitioner's argument in this regard is not persuasive.  First, the Appellate

Department of the Placer County Superior Court relied solely on California law in rejecting his

argument that the trial court improperly failed to give a unanimity instruction.  (Opinion at 3-4.)

Specifically, the state court concluded that:

> [A]s to Appellant's argument that the trial court improperly failed
> to give the unanimity instruction, this court finds that there was no
> error.  Where the evidence demonstrates more than one unlawful
> act could support a charged offense, either the prosecution must
> elect upon which act to rely, or the jurors must be given a
> unanimity instruction telling them they must unanimously agree
> which act constituted the crime.  People v. Thompson (1995) 36
> Cal. App. 4th 843.  The unanimity requirement is designed "to
> eliminate the danger that the defendant will be convicted even
> though there is no single offense which all jurors agree the
> defendant committed."  People v. Russo (2001) 25 Cal. 4th 1124,
> 1132.  An exception arises where the unlawful acts are so closely
> connected they form a single transaction.  Thompson, supra, at
> 851.  This court finds that although defendant resisted the officer in
> different ways, his conduct was ongoing and could not be fairly
> divided into discrete criminal events.  Furthermore, defendant
> offered the same defense to each act, i.e., "It did not happen."
> Defendant provided no reasonable basis for the jury to distinguish
> one defense from the other.  This court has found no cases where
> incidents committed in the same vicinity and so close in time
> required a unanimity instruction.  People v. Jefferson (1954) 123
> Cal. App. 2d 219, 221.

(Opinion at 3-4.)

---

[3]  The California instruction in question is CALJIC 17.01 which provides:

> The defendant is accused of having committed the crime of
> [        ].  The prosecution has introduced evidence for the purpose
> of showing that there is more than one act upon which a conviction
> may be based.  Defendant may be found guilty if the proof shows
> beyond a reasonable doubt that he committed any one or more of
> the acts.  However, in order to return a verdict of guilty to [        ],
> all jurors must agree that he committed the same act or acts.  It is
> not necessary that the particular act agreed upon be stated in your
> verdict.

1          However, a challenge to jury instructions does not generally state a federal

2  constitutional claim.  See Middleton v. Cupp, 768 F.2d at 1085 (citing Engle v. Isaac, 456 U.S. at

3  119); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  As noted above, habeas corpus

4  is unavailable for alleged error in the interpretation or application of state law.  Middleton, 768

5  F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v.

6  Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986).  Of course, a "claim of error based upon a

7  right not specifically guaranteed by the Constitution may nonetheless form a ground for federal

8  habeas corpus relief where its impact so infects the entire trial that the resulting conviction

9  violates the defendant's right to due process."  Hines v. Enomoto, 658 F.2d 667, 672 (9th Cir.

10  1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th Cir. 1980)).  See also Prantil v. California, 843

11  F.2d 314, 317 (9th Cir. 1988) (To prevail on such a claim petitioner must demonstrate that an

12  erroneous instruction "so infected the entire trial that the resulting conviction violates due

13  process.").

14          The analysis for determining whether a trial is "so infected with unfairness" as to

15  rise to the level of a due process violation is similar to the analysis used in determining, under

16  Brecht, 507 U.S. at 623, whether an error had "a substantial and injurious effect" on the outcome.

17  See Polk v. Sandoval, 503 F.3d 903, 911 (9th Cir. 2007) (standard applied to habeas petition

18  presenting a jury instruction challenge); McKinney v. Rees, 993 F.2d 1378, 1385 (9th Cir.

19  1993).  In making its determination, this court must evaluate the challenged jury instructions "in

20  the context of the overall charge to the jury as a component of the entire trial process."  Prantil,

21  843 F.2d at 317 (quoting Bashor v. Risley, 730 F.2d 1228, 1239 (9th Cir. 1984)).  Where, as

22  here, the challenge is to a failure to give an instruction, petitioner's burden is "especially heavy,"

23  because "[a]n omission, or an incomplete instruction is less likely to be prejudicial than a

24  misstatement of the law."  Henderson v. Kibbe, 431 U.S. 145, 155 (1977).  See also Villafuerte

25  v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997).

26  /////

1    The state court concluded that petitioner's jury was adequately instructed on the

2    elements of assault and that no unanimity instruction was required under state law under the

3    circumstances presented in this case.  The state court's conclusion that California law did not

4    require an unanimity instruction under the circumstances of this case is binding on this court.

5    Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's

6    interpretation of state law, including one announced on direct appeal of the challenged

7    conviction, binds a federal court sitting in habeas corpus").  Moreover, the state court's

8    conclusion that the unlawful acts were so closely connected in time and otherwise so as to form a

9    single transaction was not unreasonable.  Nor can it be said that the failure to give a unanimity

10   instruction so infected the entire trial that petitioner's conviction violates due process.

11   Finally, as one district court has recently observed in addressing this issue,

12   [C]riminal defendants in state court have no federal constitutional
     right to a unanimous jury verdict.  See Apodaca v. Oregon, 406

13   U.S. 404, 410-12, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972) (rejecting
     Sixth Amendment right to jury trial challenge to 10-2 state jury

14   verdict); Johnson v. Louisiana, 406 U.S. 356, 359-63, 92 S.Ct.
     1620, 32 L.Ed.2d 152 (1972) (rejecting due process challenge to 9-

15   3 state jury verdict). Moreover, due process does not require an
     instruction that the jury unanimously agree about which piece of

16   evidence supports which charge. That is, different jurors may be
     persuaded by different pieces of evidence, even when they agree

17   upon the bottom line .... there is no general requirement that the
     jury reach agreement on the preliminary factual issues which

18   underlie the verdict.  McKoy v. North Carolina, 494 U.S. 433, 449,
     110 S.Ct. 1227, 108 L.Ed.2d 369 (1990) (Blackman, J,

19   concurring); see also Schad v. Arizona, 501 U.S. 624, 631-32, 111
     S.Ct. 2491, 115 L.Ed.2d 555 (1991) (rule that jurors not required to

20   agree upon single means of commission of crime, citing McKoy,
     applies equally to contention they must agree on one of alternative

21   means of satisfying mental state element of crime).

22   Since a state criminal defendant is entitled under the Constitution
     to neither an overall unanimous verdict nor unanimous agreement

23   as to the preliminary factual issues (McKoy, 494 U .S. at 449)
     underlying the verdict, the failure to give an instruction on jury

24   unanimity as to the specific criminal threat made did not, in itself,
     implicate petitioner's Constitutional rights.  Nor can the Court

25   conclude that it by itself so infected the entire trial that the
     resulting conviction violates due process. Estelle, 502 U.S. at 72

26   (internal quotation marks omitted).

10

1    <u>Estrella v. Ollison</u>, No. EDCV 06-1086 CJC (FFM), 2009 WL 891812, at * 16 (C.D. Cal. Mar.

2    30, 2009) (emphasis in original).  <u>See</u> <u>also</u> <u>People v. Vargas</u>, 91 Cal. App. 4th 506, 562 (2001)

3    ("the requirement for jury unanimity in a criminal prosecution is a state constitutional

4    requirement.  Cal. Const. Art. I, §16 [citations omitted].  The United States Supreme Court 'has

5    never held jury unanimity to be a requisite of due process of law.'").  Accordingly, for the

6    foregoing reasons, petitioner is not entitled to relief on this claim.

7          B.   <u>Due Process and Erroneous Jury Instruction</u>

8          Petitioner also alleges that he was "denied the right to due process guaranteed by

9    the Fifth and Fourteenth Amendments when the jury was erroneously instructed on the elements

10    of assault, permitting conviction based merely on pointing at the officer's badge." (Pet. at 3.)  In

11    this regard, petitioner argues that the expert testimony admitted at his trial along with the

12    improper closing argument of the prosecutor and the erroneous instructions given to the jury

13    combined to permit his conviction on the assault charge based on an incorrect legal theory that

14    was inconsistent with California law with respect to assault.  (P. & A. in Supp. of Pet. at 25.)

15    Petitioner contends that this claim is subject to "harmless error analysis for federal constitutional

16    error – the beyond-a-reasonable-doubt standard as set forth in <u>Chapman v. California</u>, 386 U.S.

17    18 (1967)."  (<u>Id</u>.)

18          In denying petitioner's motion for rehearing the Appellate Department of the

19    Placer County Superior Court rejected petitioner's argument on this point, reasoning as follows:

20         [T]his court finds that the jury was properly instructed on the
           elements of assault and the prosecution did not commit

21         misconduct.  The trial court properly instructed the jury prior to
           argument of counsel by reading CALJIC 9.00.  There was no

22         deviation to the instruction.

23    (Opinion at 2.)

24          As noted, a challenge to jury instructions does not generally state a federal

25    constitutional claim.  <u>See</u> <u>Middleton</u>, 768 F.2d at 1085  (citing <u>Engle v. Isaac</u>, 456 U.S. at 119);

26    <u>Gutierrez</u>, 695 F.2d at 1197; <u>see</u> <u>also</u> <u>Mitchell v. Goldsmith</u>,  878 F.2d 319, 324 (9th Cir. 1989)

1  (in the absence of a federal constitutional violation, no relief can be granted even if the

2  instruction given might not have been correct as a matter of state law).

3            Here, the trial judge instructed petitioner's jury as follows:

4            You must base your decision on the facts and the law.  You have
             two duties to perform.  First you must determine what facts have
5            been proved from the evidence received in the trial and not from
             any other source.  A fact is something proved by the evidence.
6            Second, you must apply the law that I state to you to the facts as
             you determine them and in this way arrive at your verdict.
7
             You must accept and follow the law as I state it to you, regardless
8            of whether you agree with the law.  If anything concerning the law
             said by the attorneys in their arguments or at any other time during
9            the trial conflicts with my instructions on the law, you must follow
             my instructions.
10
                                          * * *
11
             In order to prove an assault, each of the following elements must
12           be proved: One, a person willfully and unlawfully committed an
             act which by its nature would probably and directly result in the
13           application of physical force on another person.

14           Two, the person committed the act while–strike that.  The person
             committing the act was aware of facts that would lead a reasonable
15           person to realize that as a direct, natural and probable result of this
             act that physical force would be applied to another person.
16
             And, three, at the time the act was committed, the person
17           committing the act had the present ability to apply physical force to
             the person of another.
18
             The word willfully means that the person committing the act did so
19           intentionally.  However, an act–strike that.  However, an assault
             does not require an intent to cause injury to another person, or an
20           actual awareness of the risk that injury might occur to another
             person.
21
             To constitute an assault, it is not necessary that any actual injury be
22           inflicted.  However, if an injury is inflicted, it may be considered in
             connection with the other evidence in determining whether an
23           assault was committed.

24  (RT at 688, 699-700.)

25  /////

26  /////

1    Petitioner has failed to identify any error in the instructions provided to the jury at

2  his trial.  Rather, the instructions given by the trial judge accurately reflect California law on

3  assault, as stated in CALJIC 9.00 which provides as follows:

4         In order to prove an assault, each of the following elements must
       be proved:
5
          1.  A person willfully [and unlawfully] committed an act which by
6       its nature would probably and directly result in the application of
       physical force on another person;
7
          2.  The person committing the act was aware of facts that would
8       lead a reasonable person to realize that as a direct, natural and
       probable result of this act that physical force would be applied to
9       another person; and

10         3.  At the time the act was committed, the person committing the
       act had the present ability to apply physical force to the person of
11      another.

12      The word "willfully" means that the person committing the act did
       so intentionally.  However, an assault does not require an intent to
13      cause injury to another person, or an actual awareness of the risk
       that injury might occur to another person.
14
       To constitute an assault, it is not necessary that any actual injury be
15      inflicted.  However, if any injury is inflicted it may be considered
       in connection with other evidence in determining whether an
16      assault was committed [and, if so, the nature of the assault].

17    Moreover, petitioner agreed that the trial court should give this very instruction on

18  assault.  (RT at 685-686; P. & A. in Supp. of Pet. at 27.)  Petitioner correctly notes that "this

19  definition of assault was incorporated in the definition of assault on a peace officer in violation of

20  Penal Code § 241(b) as charged in Count Two, CALJIC 16.100."  (P. & A. in Supp. of Pet. at

21  27.)[4]

22
23         [4] Petitioner also was charged with obstructing an officer in violation of Penal Code § 69
     and he refers the court to the elements required for a violation of that statute found in CALJIC
24   7.50.  (P. & A. in Supp. of Pet. at 27.)  CALJIC 7.50 states that:

25      Every person who willfully [and unlawfully] attempts, by means of
       any threat or violence, to deter or prevent an executive officer from
26      performing any duty imposed upon that officer by law, or who
       knowingly resists, by the use of force or violence, an executive

13

While implicitly acknowledging that these jury instructions were properly given, petitioner relies on state law, his analysis of the evidence admitted at trial and the prosecutor's closing argument to conclude that the jury was nonetheless misled with respect to the elements of assault and that this resulted in a due process violation.  (P. & A. in Supp. of Pet. at 27-29.) However,  the instructions on assault given by the trial court were in accord with California law. See CALJIC 9.00 and CALJIC 16.00.  Petitioner's argument in this regard is in actuality focused on the prosecutor's brief suggestion at the end of his closing argument that petitioner could be convicted of assault for pointing at Officer Cooney's badge and the trial court's alleged failure to make clear to the jury that it could not so find based on that evidence alone.  In its entirety, that portion of the argument upon which petitioner bases this and his prosecutorial misconduct claim is as follows:

> officer in the performance of his or her duty, is guilty of a violation of Penal Code section 69, a crime.
>
> * * *
>
> In order to prove this crime, each of the following elements must be proved:
>
> [1.  A person willfully [and unlawfully] attempted to deter or prevent an executive officer from performing any duty imposed upon that officer by law; and
>
> 2.  The attempt was accomplished by means of any threat or violence.]
>
> [1.  A person knowingly [and unlawfully] resisted an executive officer in the performance of his or her duty; and
>
> 2.  The resistance was accomplished by means of force or violence.]

Petitioner argues that "under this instruction, the resistance must have been accomplished 'by means of force or violence.'  Force and violence was not otherwise defined." (P. & A. in Supp. of Pet. at 27.)  On the contrary, petitioner could have been convicted of a violation of Penal Code § 69 if the jury found that petitioner "willfully [and unlawfully] attempted to deter or prevent an executive officer from performing any duty imposed upon that officer by law."  Rather, the evidence needed only to demonstrate that the "attempt was accomplished by means of any threat or violence."

| | | |
|---|---|---|
| 1 | Prosecutor: | I contend that based on the defendant's own |
| 2 | | admission that he was that close to the |
| | | officer's badge, even on his story |
| 3 | | (indicating) - - Sergeant Warren told you |
| | | that -- |
| 4 | Defense Counsel: | Your honor, I am going to object. This is a |
| | | misstatement of law.  Him pointing at the |
| 5 | | badge is not an assault.  That is not what the |
| | | officer testified to, and it's not a correct |
| 6 | | statement of the law. |
| 7 | Prosecutor: | Counsel brought it up in closing argument. |
| | | Rocky Warren testified that this may be - - is |
| 8 | | a violation of 241. |
| 9 | Defense Counsel: | I said not that it's a commission of a crime |
| | | to do it. |
| 10 | | |
| | Prosecutor: | We are late in the day.  I will move on. |
| 11 | | |
| | The Court: | The jurors have been given the instruction |
| 12 | | on assault.  They can decide what – if that |
| | | does constitute an assault, if that is an issue. |
| 13 | | |

(RT at 806.)

Immediately after this exchange the prosecutor concluded his closing remarks and the jury was instructed by the trial court that "if anything concerning the law said by the attorneys in their arguments or at any other time during the trial conflicts with my instructions on the law, you must follow my instructions."  (RT at 688.)  This court assumes that the jury followed the instructions as given by the judge and disregarded any statements of the prosecutor or witnesses that conflicted with the judge's instructions.  Weeks v. Angelone, 528 U.S. 225, 234 (2000).

The Appellate Department of the Placer County Superior Court rejected petitioner's argument in this regard, concluding that the trial court properly instructed the jury with CALJIC 9.00 just prior to the closing arguments of counsel.  (Opinion at 2.)  The undersigned notes that in his closing argument the prosecutor never explicitly argued that pointing at the officer's badge could constitute an assault, though his statement may well have suggested as much.  The trial court did not err, after the prosecutor indicated he would "move

15

1    on," in referring the jury back to the court's own correct instruction with respect to the assault

2    charge. The state court's decision rejecting petitioner's argument in this regard was not contrary

3    to, nor an unreasonable application of clearly established federal law. Moreover, petitioner has

4    failed to identify any instructional or other error in connection with this claim which so infected

5    his entire trial such that his resulting conviction violated due process. See Prantil, 843 F.2d at

6    317. Accordingly, petitioner is not entitled to relief on this claim.

7         C.   Prosecutorial Misconduct

8              In a related claim, petitioner alleges that he "was denied his right to federal due

9    process when the prosecutor committed misconduct by arguing that the mere act of pointing at

10   the badge constituted an assault." (Pet. at 3.) In this regard, petitioner argues that due process

11   requires a prosecutor to "correct information he knows to be false." (P. & A. in Supp. of Pet. at

12   31) (citing Napue v. Illinois, 360 U.S. 264, 269-270 (1959) and N. Mariana Islands v. Bowie,

13   243 F.3d 1109 (9th Cir. 2001)). Petitioner asserts that where, as here, there is "any reasonable

14   likelihood that the false testimony could have affected the judgment of the jury" the resulting

15   conviction must be set aside. (P. & A. in Supp. of Pet. at 31) (citing United States v. Agurs, 427

16   U.S. 97, 103 (1976) and Belmontes v. Woodford, 335 F.3d 1024, 1044 (9th Cir. 2003)).

17             The Appellate Department of the Placer County Superior Court rejected this

18   argument, concluding that "the jury was properly instructed on the elements of assault and the

19   prosecution did not commit misconduct." (Opinion at 2.)

20             A defendant's due process rights are violated when a prosecutor's misconduct

21   renders a trial fundamentally unfair. Darden v. Wainwright, 477 U.S. 168, 181 (1986).

22   However, such misconduct does not, per se, violate a petitioner's constitutional rights. Jeffries v.

23   Blodgett, 5 F.3d 1180, 1191 (9th Cir. 1993) (citing Darden, 477 U.S. at 181, and Campbell v.

24   Kincheloe, 829 F.2d 1453, 1457 (9th Cir. 1987)). Claims of prosecutorial misconduct are

25   reviewed "'on the merits, examining the entire proceedings to determine whether the prosecutor's

26   [actions] so infected the trial with unfairness as to make the resulting conviction a denial of due

1  process.'"  Johnson v. Sublett, 63 F.3d 926, 929 (9th Cir. 1995) (citation omitted).  See also

2  Greer v. Miller, 483 U.S. 756, 765 (1987); Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974);

3  Turner v Calderon, 281 F.3d 851, 868 (9th Cir. 2002).  Relief on such claims is limited to cases

4  in which the petitioner can establish that prosecutorial misconduct resulted in actual prejudice.

5  Johnson, 63 F.3d at 930 (citing Brecht, 507 U.S. at 637-38); see also Darden, 477 U.S. at 181-83;

6  Turner, 281 F.3d at 868.  Put another way, prosecutorial misconduct violates due process when it

7  has a substantial and injurious effect or influence in determining the jury's verdict.  See Ortiz-

8  Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996).

9          Petitioner has failed to demonstrate that the prosecutor's closing argument in

10 which he suggested that petitioner's pointing at the officer's badge could constitute an assault,

11 whether erroneous or not, had a substantial and injurious effect or influence in determining the

12 jury's verdict.  As noted above, the jurors were instructed by the trial court that "if anything

13 concerning the law said by the attorneys in their arguments or at any other time during the trial

14 conflicts with my instructions on the law, you must follow my instructions."  (RT at 688.)  The

15 jury was properly instructed on California law governing the assault charge.  This court assumes

16 that the jury followed the instructions as given by the judge and disregarded any brief suggestion

17 by the prosecutor or by any witnesses that conflicted with the judge's instructions.  Weeks v.

18 Angelone, 528 U.S. 225, 234 (2000).

19          The undersigned notes that this clearly was not a case in which false evidence was

20 presented by the prosecution to the jury.  Therefore several of the authorities relied upon by

21 petitioner are inapplicable here.  Moreover, the jury returned guilty verdicts on all counts against

22 petitioner, apparently rejecting his testimony and his version of the events.  Since petitioner was

23 the only witness who testified that he merely pointed at the officer's badge, he cannot show

24 actual prejudice stemming from the prosecutor's brief suggestion in his final argument based on

25 this record.  The decision of the Appellate Department of the Placer County Superior Court was

26 /////

1   not contrary to, nor an unreasonable application of clearly established federal law.  Accordingly,

2   petitioner is not entitled to relief on this claim.

3          D.   Ineffective Assistance of Counsel

4                Petitioner alleges that his trial counsel rendered ineffective assistance by failing

5   to: (1) object to hearsay and expert opinion offered by lay witnesses, (2) produce evidence of

6   prior misconduct by the California Highway Patrol Officer Cooney; and (3) to offer and

7   introduce additional expert testimony in support of the defense.  (Pet. at 3.)

8                The Appellate Department of the Placer County Superior Court rejected

9   petitioner's arguments in this regard, reasoning as follows:

10                This court also finds that [petitioner] was not denied effective
                 assistance of counsel.  The burden is on the [petitioner] to prove,
11               by a preponderance of the evidence, that he was ineffectively
                 represented.  Strickland v. Washington, 466 U.S. 668, 688 (1984).
12               A successful claim requires a showing that the attorney's deficient
                 representation resulted in the withdrawal of a potentially
13               meritorious defense or that counsel failed to perform with
                 reasonable competence that it is reasonably probable a
14               determination more favorable to the petitioner would have resulted
                 [sic]. [Petitioner] has failed to show that counsel's representation
15               fell below an objective standard of reasonable [sic].

16   (Opinion at 2-3.)

17                The Sixth Amendment guarantees the effective assistance of counsel.  The United

18   States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

19   Strickland v. Washington, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of

20   counsel, a petitioner must first show that, considering all the circumstances, counsel's

21   performance fell below an objective standard of reasonableness.  Id. at 687-88.  After a petitioner

22   identifies the acts or omissions that are alleged not to have been the result of reasonable

23   professional judgment, the court must determine whether, in light of all the circumstances, the

24   identified acts or omissions were outside the wide range of professionally competent assistance.

25   Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).

26   /////

Second, a petitioner must establish that he was prejudiced by counsel's deficient performance. Strickland, 466 U.S. at 693-94. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000). A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

In assessing an ineffective assistance of counsel claim "[t]here is a strong presumption that counsel's performance falls within the 'wide range of professional assistance.'" Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting Strickland, 466 U.S. at 689). There is in addition a strong presumption that counsel "exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689). However, that deference "is predicated on counsel's performance of sufficient investigation and preparation to make reasonably informed, reasonably sound judgments." Mayfield v. Woodford, 270 F.3d 915, 927 (9th Cir. 2001) (en banc).

Below, the court will apply these standards in addressing each aspect of petitioner's ineffective assistance claim.

1. Failure to Object

Petitioner alleges that his trial counsel should have objected to the testimony of Officer Cooney and Sheriff's Deputy Warren as well as to the "prosecutor's argument based on them." (P. & A. in Supp. of Pet. at 34-35.) According to petitioner, the officers' testimony addressing their training and what they considered to be conduct by an individual toward an officer justifying an arrest, constituted "legal conclusions, part of the ultimate issue of the trial,

which the officers were not qualified to make."  (Id. at 34.)[5]  Petitioner has failed to demonstrate that trial counsel's performance was outside the range of professionally competent assistance in this regard.  Strickland, 466 U.S. at 687-688.  Petitioner has also failed to demonstrate how his trial counsel's failure to object to the testimony of Officer Cooney and Deputy Sheriff Warren was prejudicial to him.

Officer Cooney testified on direct examination as to the standard he employed in deciding whether to arrest someone for aggressive conduct directed at the officer.  (RT at 31-34.) Deputy Sheriff Warren testified to the standard response options in a hypothetical situation where a "motorist came and grabbed the officer's badge."  (RT at 634.)  Even assuming arguendo that such testimony stated legal conclusions by the officers, the trial judge instructed the jury not to consider anything "concerning the law said by the attorneys in their arguments or at any other time during the trial [that] conflicts with my instructions on the law."  (RT at 688.)  Therefore, there is no reasonable probability that but for trial counsel's alleged error, the outcome of petitioner's trial would have been different had his counsel objected to the testimony in question. Strickland, 466 U.S. at 694; see also Weeks, 528 U.S. at 234.

Petitioner has also failed to demonstrate how trial counsel's failure to object to the prosecutor's brief reference to this testimony in his closing argument was prejudicial to petitioner.  For the same reasons stated above, any brief argument by the prosecutor, whether erroneous or not, that conflicted with the judge's instructions on the law was not to be considered by the jury.  (RT at 688.)  Therefore, there is no reasonable probability that but for trial counsel's alleged error by failing to object to the prosecutor's closing argument, the outcome of petitioner's trial would have been different.  Strickland, 466 U.S. at 694.

---

[5]  In support of this argument, petitioner analyzes the necessary elements for conviction of battery under California Penal Code § 242.  (P. & A. in Supp. of Pet. at 34.)  However, petitioner was never charged with battery under Penal Code § 242.  He was charged and convicted of assault on a peace officer in violation of Penal Code § 241(b).  (P. & A. in Supp. of Pet. at 2, 16; Answer at 5.)

1    Petitioner also suggests that his counsel was ineffective in failing to object to

2  another aspect of Deputy Warren's testimony because Warren "was not a medical expert" and

3  therefore "had no basis to render an opinion on whether the injuries suffered by [petitioner] were

4  the normal or natural result of appropriate police procedures, or of the conduct described by

5  Officer Cooney."  (P. & A. in Supp. of Pet. at 35.)  In this regard, Deputy Warren briefly testified

6  as follows:

7            Q.  Well, in your own experience how many times in your take
             downs have you – has the person ended up with multiple broken
8            ribs anywhere on his body?

9            A.  Take downs I have been present on, I think about three or four.

10           Q.  In 26 years?

11           A.  28, yeah.

12  (RT at 675.)

13           Clearly Deputy Warren was not testifying in this regard as a medical expert, but

14  rather based upon his own experience as a law enforcement officer.  Such testimony is

15  admissible.  See California Evidence Code § 801.  Therefore, any objection to this testimony

16  would have been overruled.  See Jones v. Smith, 231 F.3d 1227, 1239 n.8 (9th Cir. 2000) (an

17  attorney's failure to make a meritless objection or motion does not constitute ineffective

18  assistance of counsel); see also Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996)("the failure to

19  take a futile action can never be deficient performance.")  Thus, petitioner has failed to

20  demonstrate how his counsel's failure to object to this testimony was outside the range of

21  professionally competent assistance.  Strickland, 466 U.S. at 687-688.

22           Petitioner also alleges that his trial counsel was ineffective in failing to object to

23  Officer Cooney's testimony that he "checked his cell phone records and found that . . . there was

24  no call from his cell phone at the time of the stop."  (P. & A. in Supp. of Pet. at 35.)  Petitioner

25  argues that "the officer's recounting of information from an out-of-court source was hearsay."

26  (Id. at 36.)  Whether Officer Cooney made a telephone call from a cell phone or not, petitioner

1   has not demonstrated the relevance of that call to the jury's finding of guilt on any count.  There

2   is no reasonable probability that but for trial counsel's alleged error by failing to object to Officer

3   Cooney's testimony in this regard, the outcome of petitioner's trial would have been different.

4   Strickland, 466 U.S. at 694.  Therefore, petitioner has again failed to demonstrate how trial

5   counsel's failure to object to this testimony was prejudicial to his case.

6          Accordingly, for all of these reasons, petitioner is not entitled to relief on his

7   claim that his trial counsel's failure to object to certain trial testimony constituted ineffective

8   assistance of counsel.

9                    2.  Failure to Produce Evidence of Police Misconduct

10          Petitioner alleges that trial counsel should not have agreed to withhold evidence of

11  complaints involving Officer Cooney, received by the defense pursuant to Pitchess v. Superior

12  Court, 11 Cal. 3d 531 (1974), in exchange for the prosecutor's agreement to withhold evidence

13  of prior complaints made against petitioner.  (P. & A. in Supp. of Pet. at 36-38.)  Petitioner

14  argues in conclusory fashion that "since the Pitchess witnesses would have added far more to the

15  defense case than would have been lost by evidence of the complaints against [petitioner]

16  himself, it was an unreasonable decision to choose to forego the Pitchess evidence."  (Id. at 38.)

17          Reasonable tactical decisions, including decisions with regard to the presentation

18  of the case, are "virtually unchallengeable."  Strickland, 466. U.S. at 690 ("strategic choices

19  made after thorough investigation of law and facts relevant to plausible options are virtually

20  unchallengeable.")  Petitioner admits that the complaints against him included claims by a former

21  patient, a former employee and another involving alleged instances of violence and conflict on

22  his part.  (P. & A. in Supp. of Pet. at 37.)  Trial counsel could have reasonably believed that these

23  prior incidents involving petitioner would have given the jury the impression that petitioner had a

24  history of "crazed, bizarre conduct" that would weigh more heavily with those jurors than prior

25  complaints of misconduct made against the officer.  See RT at 742, 745.  Petitioner has failed to

26  overcome the presumption that trial counsel's decision in this regard was sound trial strategy and

1   reasonable under the circumstances.  <u>Bell v. Cone</u>, 535 U.S. 685, 698 (2002) (even when a court

2   is presented with an ineffective assistance of counsel claim that is not subject to deference under

3   §2254(d)(1), a defendant must overcome the presumption that the challenged action was sound

4   trial strategy).

5          Accordingly, petitioner is not entitled to relief on this aspect of his ineffective

6   assistance of counsel claim.

7                  3.  <u>Other Corroborating Testimony</u>

8          Petitioner argues that his trial counsel also rendered ineffective assistance by

9   failing to "back up defense claims with expert testimony."  (P. & A. in Supp. of Pet. at 38) (citing

10  <u>Douglas v. Woodford</u>, 316 F.3d 1079 (9th Cir. 2003).  In this regard, petitioner alleges that trial

11  counsel should have called Dr. David F. Smith, M.D. as an expert witness at trial to corroborate

12  the diagnosis of petitioner's injuries by defense expert, Delbert H. Meyer, M.D.  (<u>Id</u>.)

13  Furthermore, petitioner alleges that trial counsel should have called police procedures expert,  R.

14  Paul McCauley, "in conjunction with the <u>Pitchess</u> witnesses" to cast doubt on Officer Cooney's

15  testimony, "particularly insofar as he could characterize Cooney as a rogue cop who, in common

16  with other observed practice, had the motive and the ability to cover his tracks through false

17  testimony."  (<u>Id</u>. at 39-40.)

18         Petitioner's arguments in this regard are unpersuasive.  Unlike <u>Douglas</u>, this is not

19  a case where the defense attorney failed to adequately investigate whether a particular defense

20  was available at all.  (P. & A. in Supp. of Pet. at 38-39.)  Here, both expert witnesses that

21  petitioner now claims should have been called to testify were available to trial counsel.  He

22  simply chose not to call those witnesses as a matter of trial strategy.  Trial counsel's reasoning

23  for not calling McCauley to testify concerning the <u>Pitchess</u> material would appear on its face to

24  be the same as his reason for keeping the <u>Pitchess</u> material out in the first place, i.e., that the

25  introduction of such evidence would result in the prior acts evidence against petitioner being

26  admitted, thereby harming the defense case.  (<u>See</u> RT at 742, 745.)  Trial counsel could

1  reasonably have deemed the testimony of Dr. Smith to be cumulative rather than corroborative of

2  the expert testimony by Dr. Meyer regarding the extent of petitioner's injuries.  (P. & A. in Supp.

3  of Pet. at 38-39.)

4           For all of these reasons, the state court's decision rejecting petitioner's ineffective

5  assistance of trial counsel claim was not contrary to, nor an unreasonable application of clearly

6  established federal law.  Therefore, petitioner is not entitled to relief on any aspect of this claim.

7  Strickland, 466. U.S. at 690;  Bell, 535 U.S. at 698.

8                                    CONCLUSION

9           Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a

10  writ of habeas corpus be denied.

11           These findings and recommendations are submitted to the United States District

12  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

13  days after being served with these findings and recommendations, any party may file written

14  objections with the court and serve a copy on all parties.  Such a document should be captioned

15  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

16  shall be served and filed within five days after service of the objections.  The parties are advised

17  that failure to file objections within the specified time may waive the right to appeal the District

18  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

19  DATED: August 3, 2009.

21  _____
    DALE A. DROZD
22  UNITED STATES MAGISTRATE JUDGE

23  DAD:3
    hassan2144.hc

24  _____
    24